IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STEVEN W. LEIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-0439-CV-W-ODS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for supplemental security income ("SSI") benefits. The Commissioner's decision is affirmed.

## I.  BACKGROUND

Plaintiff filed his application for SSI benefits on October 30, 2010, alleging an onset date of October 13, 2010. He alleged he was unable to work due to the combination of several mental impairments, including major depressive disorder and post-traumatic stress disorder ("PTSD"). SSI benefits are not payable prior to the month after the month the application was filed, so Plaintiff had to be disabled on or after that date. This point is critical, as many of Plaintiff's arguments rely on facts that predate his eligibility.

Plaintiff was born in June 1983, has a GED, and last worked in 2007 as an overnight stockman at Wal-Mart. He testified he quit that job because he could not "handle being around people." R. at 39-40. He elaborated, explaining that while he'd had several jobs of short duration over the years, he quit all of them because he was "scared of being around people." R. at 40, 48. Plaintiff denied having any physical

limitations. R. at 49. He spends his time caring for his son (who was approximately eighteen months old at the time of the hearing), watching television, and doing household chores. He also helps his father at his house. R. at 41, 47. In addition to having difficulty being around other people, Plaintiff professed difficulty concentrating and remembering things and experiencing mood swings and fits of anger. He also stated that he experiences auditory and visual hallucinations. R. at 44-47.

At the hearing (which was held in March 2012), Plaintiff testified that he had been receiving treatment monthly from Dr. Attaulah Butt (a psychiatrist at St. Francis Hospital – for four years. R. at 44. However, the earliest record of such a visit is from March 2010 – a little more than six months before Plaintiff's onset date. The report suggests this is Plaintiff's initial visit, but it never explicitly states this fact. Plaintiff reported difficulty with depression, restless sleeping and nightmares. Dr. Butt noted Plaintiff demonstrated an intact memory for "recent, remote and immediate events" and was able to "retain information and recall information without difficulty." However, Plaintiff demonstrated "persistent feelings of dismay and dysphoria, low energy, low motivation, tendency to isolate and withdraw, feeling helpless and powerless, self esteem is poor." Plaintiff denied experiencing hallucinations. Dr. Butt assessed Plaintiff's GAF at 40, prescribed Celexa and Trazadone, referred Plaintiff to counseling, and instructed him to return in four weeks. R. at 314-15. Plaintiff returned in three weeks and reported that he had not taken the Celexa because it made him sick. He reported continued problems with nightmares, restless sleep, difficulty with socialization, and depression. Dr. Butt altered his medication, prescribing Klonopin, Zoloft, and Melatonin (apparently in lieu of Celexa and Trazadone). R. at 313.

On April 22, Plaintiff saw Vickie Thompson, a therapist at St. Francis. The record indicates this was his initial visit. The form completed by Ms. Thompson reflects that Plaintiff complained of depression, insomnia, lack of energy, frustration, anger, mood swings, paranoia, and poor concentration. The box for hallucinations was not marked. R. at 312. Plaintiff saw Dr. Butt the same day. His report indicates Plaintiff was sleeping better and in fact was "sleeping through the night," and that "anxiety and depression is not a problem currently." However, he continued to have "difficulty with panic and social anxiety and [a] tendency to easily get frustrated and aggravated." Dr.

2

Butt described Plaintiff's mood as euthymic, and Plaintiff continued to deny experiencing hallucinations. His notes reflect Plaintiff was to see Ms. Thompson to address "issues of anger management and social anxiety disorder." Plaintiff's medications were continued. R. at 311. In June, Plaintiff continued to report that he was avoiding people and got "aggravated and frustrated easily." However, he was sleeping well, his anxiety was controlled, his depression had improved, and he continued to "den[y] hallucinations or delusions or suicidal or homicidal ideations. Dr. Butt again recommended counseling. Plaintiff's GAF was "45 to 50." R. at 310. Dr. Butt issued a similar report in July. R. at 309.

Plaintiff returned to Dr. Butt in early November 2010. This constituted his first visit after his alleged onset date, as well as his first visit after his eligibility for SSI benefits commenced. He told Dr. Butt that when he saw people he would occasionally "see them dying" as he relived the auto accident that claimed the life of some of his family members. He further reported having this experience ever since he was seven, but he had not told anyone (including Dr. Butts) because he was afraid people would think he was "crazy." Interestingly, in the same report Dr. Butts indicated Plaintiff denied hallucinations – meaning there is an error or Dr. Butts viewed Plaintiff as reporting flashbacks and not hallucinations. The latter view is more likely, given Dr. Butts' ensuing reports. Regardless, Dr. Butts prescribed Depakote and again suggested Plaintiff see a counselor. R. at 307-08. In December, Plaintiff "continue[d] to report frequent thought intrusions and recurring visualization of scenes where [he] sees people dying" as if he were watching a movie scene. However, this problem was "not as frequent and not as prolonged." Dr. Butts assessed Plaintiff's GAF at "40 to 45", increased his dosage of Abilify, and "strongly advised" him to seek counseling. R. at 305-06. Dr. Butts issued similar reports in January, February and March of 2011, although Plaintiff's GAF was 45. R. at 343-47. However, in October 2011, Plaintiff's GAF was "45 to 50." His "[h]allucinations and delusions are largely under medical control." R. at 342.

In January 2011, Plaintiff underwent a consultative examination conducted by Dr. Margaret Sullivan, who completed a Psychiatric Review Technique Form ("PERT") and a Mental Residual Functional Capacity Assessment. On the PERT, Dr. Sullivan

3

indicated Plaintiff had no restrictions in activities of daily living, moderate difficulties in maintaining social functioning and in the areas of concentration, persistence, or pace, and that he had had one or two episodes of decompensation.  R. at 324.  In the narrative portion of the PERT, Dr. Sullivan noted Plaintiff had been receiving mediation and referred to therapy, that his GAF and condition had improved, and that he cared for his infant son and pets, did  house and yard chores, drove, shopped, and handled finances.  She concluded Plaintiff "require[d] tasks of low stress that are unskilled and that do not require social interaction."  R. at 326.  On the Mental Residual Functional Capacity Assessment, Dr. Sullivan indicated Plaintiff is moderately limited in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, work in proximity and get along well with others or with the general public, and accept and respond appropriately to criticism from supervisors.  R. at 327-29.

      The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels but was limited to simple, routine and repetitive tasks in a work environment devoid of fast-paced production requirements.  The work had to involve only simple decisions with few workplace changes, and could not require interaction with the public or more than occasional interaction with co-workers.  R. at 19.  Based on testimony from a vocational expert, the ALJ concluded Plaintiff could perform work as a tumbler operator, boring machine tender, or reiveting machine operator.  R. at 25.

## II. DISCUSSION[1]

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some

---

[1] The Commissioner interprets one of Plaintiff's arguments as suggesting Plaintiff should have been found to be disabled at Step 3 of the five step analysis because his condition met or equaled a listed impairment.  Read in context, the Court does not believe Plaintiff is presenting this argument, so it is not addressed herein.

4

evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714
(8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this
standard also requires that the Court consider evidence that fairly detracts from the final
decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v.
Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a
mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might
accept as adequate to support a conclusion.  Gragg v. Astrue, 615 F.3d 932, 938 (8th
Cir. 2010).

## A.  Application of Incorrect Evidentiary Burden

Plaintiff first argues the ALJ applied a higher standard of proof than is permitted
by the law.  The ALJ indicated the preponderance of the evidence did not demonstrate
Plaintiff was disabled.  Plaintiff argues the correct standard is "substantial evidence in
the Record as a whole."  Plaintiff is incorrect.  "The administrative law judge must base
the decision on the preponderance of the evidence offered at the hearing or otherwise
included in the record."  20 C.F.R. § 416.1453(a).  The standard Plaintiff has identified is
the standard the Court – as the reviewing tribunal – applies to the Commissioner's final
decision.  It is often the case that the reviewing tribunal applies a more deferential
standard when reviewing factual matters, and such is the case here.[2]

## B.  Failure to Address Decision from Missouri Department of Social Services

In October 2008, the Missouri Department of Social Services found Plaintiff was
not able to engage in substantial gainful activity and found he was still eligible for
MHABD benefits.  R. at 164-68.  His condition was viewed as comparable to that when
he was first approved for MHABD benefits, although the details of his condition were not
provided.  Critical to this decision that Plaintiff's condition had not improved was the fact

---

[2]Plaintiff's position also leads to absurdity, as it would mean a claimant would
prevail even though he or she has not demonstrated that it is more likely true than not
true that they are disabled.

5

that his then-treating psychiatrist (Dr. Alex Amante) would not approve of him working. R. at 165, 168.

Plaintiff contends the Commissioner's final decision must be reversed simply because the ALJ did not specifically discuss this decision. The Court disagrees. The ALJ is not required to discuss and analyze every piece of evidence in the Record. E.g., Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010). The decision was not binding on the ALJ. 20 C.F.R. § 404.1504. The decision predates the relevant time period by two years, is based on circumstances that are largely not described, and depends on a fact (Dr. Amante's disapproval) that was no longer relevant. Under these circumstances, the Department of Social Services' decision was not "important enough" to require explicit discussion by the ALJ. Morrison v. Apfel, 146 F.3d 624, 628 (8th Cir. 1998). This does not mean the decision should be ignored, or that it should not be considered in determining whether the Commissioner's decision is supported by substantial evidence in the Record as a whole. The Court merely concludes that the mere failure to specifically mention the decision does not require reversal and remand.

### C. Plaintiff's RFC

Plaintiff contests the ALJ's determination of his RFC. He first contends the ALJ erred in failing to fully and completely implement Dr. Sullivan's opinions. The ALJ wrote that she gave "significant weight" to Dr. Sullivan's opinion, and that she "*essentially* adopted the . . . opinion in its entirety." R. at 23 (emphasis supplied). From this, Plaintiff concludes that the ALJ was required to incorporate everything Dr. Sullivan wrote into the RFC. This is incorrect; the ALJ did not say she agreed with 100% of Dr. Sullivan's assessment. Moreover, in context it appears the ALJ was addressing Dr. Sullivan's determination that Plaintiff did not meet or equal a listed impairment. Finally, the ALJ was entitled to consider the opinions and notes provided by Dr. Butt, as he was Plaintiff's treating physician.

Plaintiff also faults the ALJ for her handling of Dr. Butt's assessment of Plaintiff's GAF scores. The ALJ did not ignore the GAF scores; she discussed them and concluded that "the lower GAF scores are unexplained and/or reflect temporary

manifestations of mental illness, . . . [A]s discussed above, the claimant's condition had dramatically improved with medications. The GAF ratings are accorded very slight weight as opinions." R. at 23. This was a permissible finding because the ALJ has the discretion to "afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010); see also Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010); Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 666 (8th Cir. 2003). Dr. Butt's reports provided an ample basis for both the specific decision to not rely extensively on the GAF scores and the overall determination of Plaintiff's RFC.

Finally, Plaintiff argues (at least by implication) that the ALJ erred in not according greater weight to his testimony. Plaintiff's testimony was inconsistent with his statements to Dr. Butts. Plaintiff's testimony was also inconsistent with Dr. Butts' assessment of his condition. The ALJ was also entitled to consider Plaintiff's failure to take recommended steps to improve his condition when he adamantly refused to see a counselor. These are just a few of the factors the ALJ considered in evaluating Plaintiff's credibility. R. at 21-22, 50. Resolving these inconsistencies was a matter for the ALJ, and there is substantial evidence to support the ALJ's factual findings.

### III. CONCLUSION

The Commissioner's final decision denying Plaintiff's claim for SSI benefits is affirmed.

IT IS SO ORDERED.

DATE: May 22, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

7